UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____            │
│ DATE FILED: 3/26/2014            │
└─────────────────────────────────┘
```

LATEE ROBINSON,

                    Plaintiff,

        - against -

J. HENSCHEL, SGT. WARD, T. LUCAS,
CORRECTION OFFICER TITKA, K.
JOHNSON, MACKO, CARON,
SUPERINTENDENT PHILLIPS,
STEIBAUGH, SULLIVON, LIEUTENANT
ALEXANDER, R. HAMILTON, C.
FRASER, CORRECTIONAL OFFICER D.
KAUFMAN, C. WILSON, R. ARRICK,
CORRECTIONS OFFICER D. HUTTEL, T.
KOHLER, T. STEVENS, SCHMITT,
CORRECTION OFFICER R. WARD,
NOVOA, PRISON MEDICAL STAFF'S
RN STAFF, KRAUSE, B. ROBERTS, and
SUPERINTENDENT ROBERT ERCOLE,

                    Defendants.

**MEMORANDUM
OPINION & ORDER**

10 Civ. 6212 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiff Latee Robinson brings this action pursuant to 42 U.S.C.

§ 1983, alleging that Defendants – correction officers and supervisors at the Green Haven

Correctional Facility ("Green Haven") – violated his constitutional rights. (Am. Cmplt.

(Dkt. No. 61))  Many of Plaintiff's claims were previously dismissed.  (See Dkt. No. 46)

The remaining defendants – Ercole, Steinbaugh, Fraser, Wilson, Kaufman, Kohler,

Huttel, and Arrick ("Defendants") – have moved for summary judgment on Plaintiff's

remaining claims.  (Dkt. No. 70)  For the reasons stated below, Defendants' motion will

be granted in part and denied in part.

# BACKGROUND[1]

On August 3, 2012, Plaintiff filed an Amended Complaint alleging that Defendants used excessive force against him on three occasions in April and May 2007. (Am. Cmplt. (Dkt. No. 61))  Plaintiff alleges that on April 24, 2007, an unnamed Green Haven correction officer shut a cell door on his hand.  (Id. at 4)  Plaintiff also claims that – later that day – Defendant Kaufman repeatedly slammed his injured hand against a wall during a pat frisk.  (Id. at 4-5)  Plaintiff further alleges that on May 10, 2007, Defendants assaulted him in a disciplinary hearing room while he was handcuffed.  (Id. at 5)

On April 12, 2013, Defendants moved for summary judgment on several grounds, including failure to exhaust administrative remedies, failure to allege the personal involvement of Defendants in the cell door and May 10 incidents, and failure to demonstrate that Defendant Kaufman's use of force on April 24, 2007, rose to the level of a constitutional violation.  (Dkt. No. 70; Def. Br. (Dkt. No. 73))

Plaintiff's opposition was due on May 10, 2013.  (Dkt. No. 69)  On August 28, 2013 – after having received no opposition from Plaintiff – this Court directed that another copy of Defendants' motion papers be sent to Plaintiff at Great Meadow Correctional Facility – the address on file with the Court – and extended the deadline for Plaintiff's opposition papers to October 1, 2013.  (Dkt. No. 81)  On December 11, 2013, Plaintiff was granted an additional extension of time to January 9, 2014.  (Dkt. No. 85)  The docket sheet indicates that the December 11, 2013 order and copies of Defendants' motion papers were sent to Plaintiff on December 12, 2013, and that a return receipt was received by the Clerk's Office on December 19, 2013.

---

[1]  Familiarity with this Court's prior orders is assumed.

With a February 11, 2014 letter to the Court, Plaintiff submitted thirty-one pages of optometrist and eye care medical reports from various correctional facilities. (Dkt. No. 87)  The letter and the eye care reports are not responsive to Defendants' motion and have no bearing on the claims remaining in this case.  Accordingly, the Court deems Defendants' summary judgment motion unopposed.

## DISCUSSION

### I.   SUMMARY JUDGMENT STANDARD

Summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)).  "[W]here the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 116 (2d Cir. 1991).

In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).  However, to survive a motion for summary judgment, a plaintiff "must 'do more than simply show that there is some metaphysical doubt as to the material facts.' . . . [He] must come forth with evidence sufficient to allow a reasonable jury to find in [his] favor." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  "Mere

conclusory statements, conjecture or speculation" by the plaintiff will not defeat a

summary judgment motion.  Gross v. Nat'l Broad. Co., Inc., 232 F. Supp. 2d 58, 67

(S.D.N.Y. 2002).

"Although the same standards apply when a pro se litigant is involved,

'the pro se litigant "should be given special latitude in responding to a summary

judgment motion."' . . . [T]he Court must liberally construe the claims of a pro se

litigant."  Brown v. Selwin, 250 F. Supp. 2d 299, 306-07 (S.D.N.Y. 1999) (quoting

Shepherd v. Fraisher, No. 96 Civ. 3283 (JGK), 1999 WL 713839, at *2 (S.D.N.Y. Sept.

14, 1999) (citation omitted)).

Where, as here, "the non-moving party 'chooses the perilous path of

failing to submit a response to a summary judgment motion, the district court may not

grant the motion without first examining the moving party's submission to determine if it

has met its burden of demonstrating that no material issue of fact remains for trial.'"  Vt.

Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (quoting

Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001)); see also D.H. Blair & Co., Inc. v.

Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).  Even an unopposed motion for summary

judgment must "fail where the undisputed facts fail to 'show that the moving party is

entitled to judgment as a matter of law.'"  Vt. Teddy Bear Co., 373 F.3d at 244 (quoting

Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996)).

## II.    THE APRIL 24, 2007 CELL DOOR INCIDENT

Plaintiff claims that on April 24, 2007, an unnamed Green Haven

correction officer escorting him from a disciplinary hearing intentionally shut a cell door

on Plaintiff's right hand.  (Am. Cmplt. (Dkt. No. 61) at 4)  Plaintiff alleges that he

suffered injuries – including "disfigure[d] knuckles" and "pain" – as a result.  (Id. at 5)

Plaintiff has not alleged that other officers were present or otherwise involved in this

incident.

> **A.**      **Applicable Law**

      "It is well settled in this Circuit that 'personal involvement of defendants

in alleged constitutional deprivations is a prerequisite to an award of damages under

§ 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of

Brookfield, 950 F.2d 880, 886 (2d Cir. 1991); McKinnon v. Patterson, 568 F.2d 930, 934

(2d Cir. 1977)).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff

must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676

(2009); see Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) ("[S]upervisor liability

in a § 1983 action depends on a showing of some personal responsibility, and cannot rest

on respondeat superior."); Garcia v. Watts, No. 08 Civ. 7778 (JSR) (HBP), 2009 WL

2777085, at *12-13 (S.D.N.Y. Sept, 1, 2009).  Mere presence in the "prison chain of

command" is not sufficient to demonstrate personal involvement for purposes of Section

1983.  See Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam).

      With respect to defendants in supervisory positions, the Second Circuit

has instructed that

> [t]he personal involvement of a supervisory defendant may be shown by
> evidence that:  (1) the defendant participated directly in the alleged
> constitutional violation, (2) the defendant, after being informed of the
> violation through a report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or custom,

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

### B.     Analysis

Here, Plaintiff has not offered any evidence that any of the Defendants were personally involved in the April 24, 2007 cell door incident.  The Amended Complaint does not indicate that any of the Defendants participated in or witnessed this incident.  In his deposition, Plaintiff stated, "Like I said in my report, . . . I was being escorted by a prison guard in a disciplinary hearing.  And I'm unfamiliar with that prison guard, I don't know his name, and I never seen him before."  (Harkins Decl. (Dkt. No. 75), Ex. A ("Deposition Tr.") at 14)  Plaintiff has not demonstrated – or even alleged – that any of the Defendants who may have supervised the unnamed officer were aware of the incident, were responsible for a policy or custom under which it occurred, or were grossly negligent in supervising the unidentified officer.

Because Plaintiff has not offered evidence sufficient to raise a factual issue as to whether any Defendant was personally involved in the cell door incident, Defendants' motion for summary judgment will be granted as to this claim.  See Pravda v. City of Albany, N.Y., 956 F. Supp. 174, 182 (N.D.N.Y. 1997) (granting summary judgment as to individual defendants where only "John Doe" officers were alleged to have participated in the use of force and plaintiff provided only "conclusory allegations . . . insufficient to establish the personal involvement of the[ ] [named] individual Defendants in Plaintiff's alleged constitutional deprivations").

6

III.     **THE APRIL 24, 2007 PAT FRISK**

        Plaintiff alleges that on April 24, 2007 – after the cell door incident –
Defendant Kaufman used excessive force against him during a pat frisk.  (Amended
Cmplt. (Dkt. No. 61) at 4-5)  According to Plaintiff, Kaufman knew that Plaintiff's hand
had been injured, but he nonetheless squeezed the hand during the pat frisk, causing
Plaintiff "extreme pain."  (Id. at 4)  Defendant Kaufman then allegedly "slamm[ed]"
Plaintiff's hand repeatedly against a wall where Plaintiff was being frisked, causing
injuries to his knuckles.  (Id. at 5; Deposition Tr. 21)

        Defendant Kaufman claims that the pat frisk was necessary to determine
whether Plaintiff was carrying contraband, and he denies that the force used was
excessive.  (See Kaufman Decl. (Dkt. No. 77))  In his affidavit, Kaufman states that while
he was escorting inmates to and from the facility's medical center to receive medication
on April 24, 2007, he saw an inmate pass something to Plaintiff, and then observed
Plaintiff put his hand over his mouth.[2]  (Id. ¶ 5)  Suspecting that Plaintiff had received
contraband from the other inmate, Kaufman directed him to place his hands on a hallway
wall so that he could be frisked.  (Id. ¶¶ 5-7)

        Plaintiff refused to do so, stating that his hand hurt.  (Id. ¶ 7)  Kaufman
states that the hand was not bandaged and did not appear to be injured.  (Id.)  Plaintiff's
refusal to comply made Kaufman "suspicious that he was palming contraband and
attempting to avoid detection."  (Id. ¶ 8)  Kaufman was also escorting approximately
thirty inmates from the medical center at that time, and was concerned that "Plaintiff's
non-compliance could have provoked a disturbance from the inmates waiting to leave,

---

[2] Plaintiff denies that he received anything from the other inmate.  (Deposition Tr. 21)

which is . . . a significant concern within a correctional facility." (<u>Id.</u> ¶ 9)  According to

Kaufman, he "took [P]laintiff's left hand, guided it to the wall, and told him to place the

heel of his hand, or the base of his wrist, on the wall." (<u>Id.</u> ¶ 7)  He then conducted the

frisk "without further incident." (<u>Id.</u>)

       After the pat frisk, Plaintiff was taken to the prison's medical facility

pursuant to an institutional policy that requires inmates to be seen by medical staff

"following any use of force." (Healey Decl. (Dkt. No. 76) ¶ 5)  Plaintiff's hand had been

examined earlier that day at the medical facility, after Plaintiff claimed that a cell door

had been shut on his hand. (<u>Id.</u> ¶ 4)  At that time, a nurse had observed "a small

abrasion . . . on [P]laintiff's left hand . . . [and] minor swelling, but . . . Plaintiff had full

range of motion with his left hand and was able to make a fist." (<u>Id.</u>)  Plaintiff left the

earlier examination "before being seen by a medical provider, thus refusing evaluation

and care." (<u>Id.</u>)  He signed a "Refusal of Medical Examination or Treatment" form. (<u>Id.</u>,

Ex. B)

       During the examination after the pat frisk, a different nurse observed "that

there was slight swelling on his left knuckles which had been noted earlier in the day, that

he had full range motion with his left hand, and that his skin was fully intact. (<u>Id.</u> ¶ 6)

Additionally, Plaintiff had a superficial abrasion on his left finger that had also been

noted earlier in the day." (<u>Id.</u>)  No other injuries were observed. (<u>Id.</u>)

    **A.**    **<u>Applicable Law</u>**

       "The Eighth Amendment, which applies to the states through the Due

Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and

unusual punishments,' . . . including the 'unnecessary and wanton infliction of pain.'"

Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) (quoting Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981)). "A claim of cruel and unusual punishment . . . has two components – one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Id. (citing Hudson v. McMillian, 503 U.S. 1, 7-8 (1992); Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999)). "To establish a constitutional violation, and hence a claim pursuant to section 1983, a plaintiff must meet both a subjective and an objective requirement." Virella v. Pozzi, No. 05 Civ. 10460 (RWS), 2006 WL 2707394, at *3 (S.D.N.Y. Sept. 20, 2006) (emphasis added).

"Subjectively, the plaintiff must demonstrate that the defendant acted wantonly. The essential question is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7) (internal citation omitted); see also Sims, 230 F.3d at 21. Force is not wanton when it is minimal and employed for the purpose of subduing a prisoner. See, e.g., Allaway v. McGinnis, 473 F. Supp. 2d 378, 382-83 (W.D.N.Y. 2007) (four punches that officer delivered as "'softening blows' administered 'for the sole purpose of getting plaintiff to comply with the officer[']s orders'" not wanton); Boomer v. Lanigan, No. 00 Civ. 5540 (DLC), 2002 WL 31413804, at *6 (S.D.N.Y. Oct. 25, 2002) (conduct not wanton when officers used "minimal force" in pushing plaintiff into holding cell "after holding him in place for several minutes in an effort to settle him down").

As to the objective inquiry, "plaintiff must show that the violation is 'sufficiently serious or harmful.'" Virella, 2006 WL 2707394, at *3 (quoting United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999)). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's

constitutional rights.'" Hudson, 503 U.S. at 9 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).  However, "a claim of excessive force may be established even if the victim does not suffer 'serious' or 'significant' injury, provided that the amount of force used is more than 'de minimis,' or involves force that is 'repugnant to the conscience of mankind.'" Walsh, 194 F.3d at 47-48 (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976); Hudson, 503 U.S. at 9-10).  "'[A] de minimis use of force will rarely suffice to state a constitutional claim.'" Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999) (quoting Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993)).

The objective inquiry is "context specific, turning upon 'contemporary standards of decency.'" Blyden, 186 F.3d at 263 (quoting Hudson, 503 U.S. at 8). Offense to decency, rather than severity of the injury, is dispositive:  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . . whether or not significant injury is evident." Hudson, 503 U.S. at 9.

**B.      Analysis**

As to his claim against Defendant Kaufman, Plaintiff has not offered sufficient evidence to satisfy either the subjective or the objective component of an excessive force claim.

As to the subjective component, Plaintiff has not shown that the force used was applied "maliciously and sadistically to cause harm." Sims, 230 F.3d at 21 (quoting Hudson, 503 U.S. at 7).  The evidence shows that Kaufman conducted the pat frisk out of concern that Plaintiff had obtained contraband.  It is undisputed that Kaufman used force on Plaintiff's hand only after Plaintiff refused to comply with his instructions during the

10

frisk. Plaintiff's refusal to comply increased Kaufman's suspicion that Plaintiff had, in fact, obtained contraband. Plaintiff's insubordination also created a risk that Kaufman would lose control over the thirty inmates he was then escorting back to their cells from the medical center.

Forcing Plaintiff's hand against the wall addressed both concerns. The action was designed to quickly reveal whether Plaintiff was in fact holding contraband, thus permitting Kaufman to return to his assignment of escorting the thirty inmates back to their cells. Under these circumstances – and given Plaintiff's refusal to obey – Kaufman's conduct cannot be characterized as wanton. See Chambliss v. Rosini, 808 F. Supp. 2d 658, 669 (S.D.N.Y. 2011) (subjective component of excessive force claim was not established because "the force exerted upon plaintiff was applied in a good-faith effort by [the officer] to maintain or restore discipline following [the inmate's] extremely disruptive behavior" and "the record [was] entirely devoid of any evidence that tend[ed] to show that [the officer's] conduct was in any[ ]way malicious or sadistic"); Gashi v. Cnty. of Westchester, No. 02 Civ. 6934 (GBD), 2007 WL 749684, at *8 (S.D.N.Y. Mar. 12, 2007) (granting defendants summary judgment where plaintiff's claim was "lacking . . . any evidence that the . . . officers acted wantonly in an attempt to maliciously or sadistically cause plaintiff injury, or that the force was not applied in good faith to maintain or restore discipline."). Plaintiff has thus not satisfied the subjective component of the excessive force test.

In evaluating the objective component, courts in this District have noted that "conducting pat frisks on prisoners is a necessary procedure to ensure safety and security of prisons, and correction officers are authorized to conduct random pat frisks on

free movement inmates going to or coming from services and programs pursuant to DOC

policy." Tavares v. City of New York, No. 08 Civ. 3782 (PAE) (JCF), 2011 WL

5877550, at *6 (S.D.N.Y. Oct. 17, 2011), adopted by, No. 08 Civ. 3782 (PAE), 2011 WL

5877548 (S.D.N.Y. Nov. 23, 2011) (internal quotation and citation omitted). "[C]ase law

reflects that actions taken consistent with a forceful pat frisk – the most serious contact

alleged by the plaintiff – are not sufficiently 'repugnant to the conscience of mankind' to

give rise to an Eighth Amendment claim." Id. (quoting Hudson, 503 U.S. at 10) (de

minimis use of force where no "evidentiary material in the record reveal[ed] that [inmate]

suffered any harm other than a few minutes of verbal abuse, unwanted pat-frisking, and

the resulting pressure on his previously injured hand"); Kalwasinski v. Artuz, No. 02 CV

2582 (LBS), 2003 WL 22973420, at *6-7 (S.D.N.Y. Dec. 18, 2003) (de minimis use of

force where defendant pressed the Plaintiff's face into the wall while conducting a pat

frisk); Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 471 (S.D.N.Y. 1998) ("[K]icking an

inmate's ankles and feet [during a pat frisk] . . . is de minimus . . .").

   Accepting Plaintiff's description of his hand being "slammed" repeatedly

against the wall, the amount of force Kaufman applied in doing so was de minimis. "The

force alleged in this case is not different in degree from the force deemed de minimis in

numerous other cases. [For example,] [a] correction officer's forcing an inmate's face

into a prison wall, though clearly unpleasant to endure, would not appear 'repugnant to

the conscience of mankind.'" Taylor v. N.Y. Dep't of Corr., No. 10 Civ. 3819 (JPO),

2012 WL 2469856, at *5 (S.D.N.Y. June 27, 2012) (quoting Hudson, 503 U.S. at 9-10).

Moreover, Plaintiff's medical records indicate that his existing hand injuries were not

exacerbated, and that he suffered no additional injuries during his encounter with

Kaufman. See Chambliss, 808 F. Supp. 2d at 668-69 ("[T]here is no indication from the record that plaintiff sustained a serious injury as a result of this incident. While plaintiff contends that [the officer's] conduct caused an injury to his right hand and wrist, . . . [plaintiff] concedes that his hand and wrist were injured prior to the incident. . . . [T]he uncontroverted evidence shows that [plaintiff's] existing wrist and hand injury was not seriously aggravated by [the officer's] conduct. . . . At most, the record establishes that [plaintiff] was subjected to a de minimis amount of force as a result of which he suffered no discernible injury.").

The lack of additional injury to Plaintiff's hand demonstrates that Kaufman's actions were not sufficiently serious to rise to the level of a constitutional violation. See, e.g., Espinal v. Goord, No. 00 Civ. 2242 (AJP), 2001 WL 476070, *13 n.46 (S.D.N.Y. May 7, 2001) ("[A]llegations that [officer] hit [inmate] two or three times in the face, causing his face to turn red, but resulting in no other injuries . . . are insufficient to state an Eighth Amendment claim."); Yearwood v. LoPiccolo, No. 95 Civ. 2544 (DC), 1998 WL 474073, *1, *7 (S.D.N.Y. Aug. 10, 1998) (de minimis use of force where plaintiff alleged that "[an officer] supposedly grabbed his neck and 'started choking [him] and [another officer] hit [him] on the right side of [his] head with a pair of keys and [a third officer] punch[ed] [him] in the mouth busting [his] bottom lip'" but medical records did not reflect any injuries from the encounter); DeArmas v. Jaycox, No. 92 Civ. 6139 (LMM), 1993 WL 37501, at *4 (S.D.N.Y. Feb. 8, 1993), aff'd, 14 F.3d 591 (2d Cir. 1993) (de minimis use of force where inmate was "punched once and kicked once and, consequently, suffered a bruise and an injured right knee"). "Where, as here, a plaintiff alleges only a degree of roughness that is common in prison contexts, and has

13

not claimed a lasting or even fleeting injury resulting from the defendant's conduct, courts in this circuit have routinely held that such conduct is insufficiently serious to support an Eighth Amendment claim." Vogelfang v. Capra, 889 F. Supp. 2d 489, 507 (S.D.N.Y. 2012).

Accordingly, Defendants will be granted summary judgment on Plaintiff's claims arising out of the April 24, 2007 pat frisk.

## IV.   THE MAY 10, 2007 INCIDENT

Plaintiff alleges that Defendants Kaufman, Kohler, Arrick, Huttel, Wilson, Fraser, Steinbaugh, and Ercole assaulted him while he was handcuffed at a disciplinary hearing on May 10, 2007. (Am. Cmplt. (Dkt. No. 61) at 5) At his deposition, Plaintiff testified that approximately eight officers punched and kicked him, and beat him with a baton and handcuffs, for approximately twenty minutes. (Deposition Tr. 33) Three or four officers then escorted Plaintiff to the medical facility, punching him and slamming him into walls on the way there. (Id. at 34) Plaintiff claims that as a result he "suffer[ed] pain physically to [the] face, head, back, chest, and all over [his] body." (Am. Cmplt. (Dkt. No. 61) at 5)

Defendants argue that they are entitled to summary judgment on this claim because Plaintiff has not exhausted his administrative remedies. (Def. Br. (Dkt. No. 73) at 9-11) Alternatively, Defendants Ercole, Steinbaugh, Wilson, Fraser, Kohler, Huttel, and Arrick argue that they are entitled to summary judgment because Plaintiff has not offered facts showing that they were personally involved in the May 10 incident. (Id. at 13-15)

14

A.      **Exhaustion of Administrative Remedies**

1.      **Defendants' Successive Summary Judgment
        Motions Regarding the May 10, 2007 Incident**

The May 10 alleged assault was the subject of a motion to dismiss earlier

in this case.  Defendants argued at that time that Plaintiff had not exhausted his

administrative remedies.  (See Jan. 30, 2012 Order (Dkt. No. 46) at 16-22)  In support of

their motion, Defendants

> submitted material outside the pleadings, including an affidavit and copies
> of Robinson's grievance history. . . . Defendants [also] gave notice to
> Robinson that the Court might treat Defendants' Rule 12(b)(6) motion as a
> motion for summary judgment. . . . In response, Robinson filed an
> opposition, arguing that summary judgment [was] not
> appropriate. . . . Accordingly, the Court . . . convert[ed] Defendants' Rule
> 12(b)(6) motion to a motion for summary judgment . . .

(Id. at 18)  This Court went on to deny Defendants' motion as to the May 10 incident,

because of evidence in the record that an Inmate Grievance Program supervisor might

have refused to process Plaintiff's appeal of a denial of his grievance.  (Id. at 22)

Defendants now renew their argument that they are entitled to summary

judgment on Plaintiff's claim concerning the May 10 incident, because of his failure to

exhaust his administrative remedies.  (Def. Br. (Dkt. No. 73) at 9-11)  The first issue

raised by Defendants' motion is whether it is appropriate for this Court to consider

multiple summary judgment motions concerning this claim.

"The Court 'do[es] not approve in general the piecemeal consideration of

successive motions for summary judgment' because parties ought to be 'held to the

requirement that they present their strongest case for summary judgment when the matter

is first raised.'"  Siemens Westinghouse Power Corp. v. Dick Corp., 219 F.R.D. 552, 554

(S.D.N.Y. 2004) (quoting Allstate Fin. Corp. v. Zimmerman, 296 F.2d 797, 799 (5th Cir.

1961)) (alteration in original). "[T]he Court certainly has discretion to review a

successive summary judgment motion seeking precisely the same relief as before . . ."

Id. (citing Wechsler v. Hunt Health Sys., Ltd., 198 F. Supp. 2d 508, 514 (S.D.N.Y.

2002)). However, "[a] party may renew its motion for summary judgment . . . [only if] it

is supported by new material." Wechsler, 198 F. Supp. 2d at 514 (citing Keehan v.

Keehan, No. 96 Civ. 2481 (PKL), 2000 WL 502854, at *3 (S.D.N.Y. Apr. 25, 2000)); see

also Twin Labs., Inc. v. Weider Health & Fitness, 720 F. Supp. 31, 34 (S.D.N.Y. 1989),

aff'd, 900 F.2d 566 (2d Cir. 1990). A successive motion for summary judgment is

"procedurally improper" if the movant does "not raise[ ] any new facts or arguments

which it could not have raised in the first round of briefing." Siemens Westinghouse

Power Corp., 219 F.R.D. at 554.

        In support of the exhaustion arguments in the instant motion, Defendants

have submitted (1) an affidavit from the Inmate Grievance Program Supervisor at Green

Haven Correctional Facility; (2) a copy of Robinson's grievance complaint regarding the

May 10, 2007 incident; (3) a form reflecting the superintendant's denial of that complaint

and Plaintiff's appeal; (4) a grievance log reflecting the superintendant's denial of the

grievance; and (5) the Central Office Review Committee's denial of Plaintiff's appeal.

(See Mauro Decl. (Dkt. No. 78) & Exs. A-D)

        These documents are all records of the Department of Correctional

Services and were available to Defendants in March 2011 when they filed their motion to

dismiss. Defendants will not be permitted a "second bite at the apple." The newly

submitted evidence should have been presented in March 2011, in connection with

Defendants' motion at that time. See Jackson v. Goord, No. 06-CV-6172 CJS, 2013 WL

1560204, at *5 (W.D.N.Y. Apr. 10, 2013) (quoting Middlegate Dev., LLP v. Beede, Civ.

Action No. 10-0565-WS-C, 2011 WL 3475474, *11 n.26 (S.D. Ala. Aug. 9, 2011))

(observing "the importance of not allowing parties to 'treat their initial summary

judgment motions as a "dry run" which they would have an opportunity to redo or

supplement – at considerable additional cost to opposing parties and at a considerable

drain to scarce judicial resources – via a new Rule 56 motion later on to correct any

deficiencies identified by opposing counsel or the court in processing the initial

motion'"). In sum, Defendants' successive motion for summary judgment on exhaustion

grounds is "procedurally improper" and is properly denied on that basis alone. See

Siemens Westinghouse Power Corp., 219 F.R.D. at 554.

### 2.     Plaintiff's Exhaustion of His Administrative Remedies

Even if this Court were to consider the merits of Defendants' exhaustion

argument, it would conclude that there is a material factual dispute as to this issue.

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a),

"[n]o action shall be brought with respect to prison conditions under section 1983 of this

title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted."

This requirement "'applies to all inmate suits about prison life, whether they involve

general circumstances or particular episodes, and whether they allege excessive force or

some other wrong.'" Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009) (quoting Porter

v. Nussle, 534 U.S. 516, 532 (2002)). Therefore, "the Prison Litigation Reform Act's

exhaustion requirement . . . applies to excessive force claims." Hemphill v. New York,

380 F.3d 680, 681 (2d Cir. 2004). "[C]ompliance with state procedural rules is necessary

to achieve '[t]he benefits of exhaustion [that] can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.'" Espinal, 558 F.3d at 124 (quoting Woodford v. Ngo, 548 U.S. 81, 95 (2006)) (second and third alterations in original).

"Section 1997e(a) requires 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009) (quoting Woodford, 548 U.S. at 90 (internal quotation marks omitted) (emphasis in original)). "[B]ecause 'it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion[,]' . . . [t]he exhaustion inquiry . . . requires that [the court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." Espinal, 558 F.3d at 124 (quoting Jones v. Bock, 549 U.S. 199, 218 (2007)).

As to Plaintiff's claims here, the PLRA "requires complete exhaustion in accordance with the administrative procedures within the New York State Department of Correctional Services ('DOCS')." Muhammad v. Pico, No. 02 Civ. 1052 (AJP), 2003 WL 21792158, at *7 (S.D.N.Y. Aug. 5, 2003).

> The regular DOCS grievance procedure consists of three tiers. First the inmate files a level 1 grievance . . . with the Inmate Grievance Resolution Committee ("IGRC") . . . Next, the inmate has . . . to appeal the IGRC decision to the superintendent of the facility . . . The inmate's final opportunity for resolution of his grievance is to appeal to the [Central Office Review Committee or] CORC . . ."

Hemphill, 380 F.3d at 682.

It is undisputed that Plaintiff properly pursued his administrative remedies with respect to the alleged May 10, 2007 assault through at least the first two tiers of the

18

grievance process. (See Def. Br. (Dkt. No. 73) at 9-10; Mauro Decl. (Dkt. No. 78) ¶¶ 4-6) On May 23, 2007, Plaintiff filed an inmate grievance complaint alleging that he was physically assaulted on May 10, 2007. (Mauro Decl. (Dkt. No. 78), Ex. A) The IGP received this grievance on June 1, 2007. (Id.) Superintendant Ercole denied the grievance on June 27, 2007. (Id., Ex. B)

To appeal the superintendant's decision, Plaintiff was required to file an appeal with the CORC within seven days of receiving the decision, pursuant to 7 N.Y.C.R.R. 701.5(d)(1)(i). Plaintiff filed his appeal on August 3, 2007, and the CORC received it on August 22, 2007. (Mauro Decl. (Dkt. No. 78), Exs. B, D) The CORC refused to accept Plaintiff's appeal, however, finding that it was untimely. (Id., Ex. D) The CORC concluded that "the dates [Plaintiff] wrote on [the] form . . . indicate[ ] [that he] exceeded the 7 day time limit on CORC appeals." (Id. ¶ 8 & Ex. D) On the appeal form, however, Plaintiff had written that he was "not appealing [the] decision late, [because he only] received [a] copy [of the decision on] 8-3-07," and thus was filing his appeal on the same day that he had received the superintendant's decision. (Id., Ex. B)

"[T]he exhaustion of administrative remedies must be . . . in compliance with a prison grievance program's deadlines . . ." George v. Morrison-Warden, No. 06 Civ. 3188 (SAS), 2007 WL 1686321, at *2 (S.D.N.Y. June 11, 2007). "Without mitigating circumstances, courts consistently have found that CORC's dismissal of a grievance appeal as untimely constitutes failure to exhaust available administrative remedies." Soto v. Belcher, 339 F. Supp. 2d 592, 595 (S.D.N.Y. 2004). Accordingly, if Plaintiff's appeal was, in fact, untimely, then he would have failed to exhaust his administrative remedies with respect to the May 10, 2007 incident.

Defendants have not offered any affirmative evidence as to when Plaintiff received the superintendant's decision, however, and thus have not established that his appeal to the CORC was untimely. In concluding that Plaintiff's appeal was untimely, the CORC did not cite to DOC records establishing when Plaintiff was provided with a copy of the superintendant's decision. Instead, the CORC noted that it appeared from Plaintiff's appeal form that Plaintiff – in referencing when he had received the superintendant's decision – changed the date from "7-3-07" to "8-3-07." (See Mauro Decl. (Dkt. No. 78), Ex. D) Defendants rely on this observation to argue that Plaintiff received the superintendant's decision on July 3, 2007. (Def. Br. (Dkt. No. 73) 10-11)

Defendants have not offered evidence demonstrating that Plaintiff actually received the decision on July 3, 2007, however. The alleged "date change" is not dispositive of this issue for several reasons. First, it is not clear that Plaintiff changed the date on the appeal form. Second, even if he did change the date, it is not clear whether that change was made to correct a simple error or whether the change indicates that Plaintiff actually received the superintendant's decision on July 3, 2007. Most importantly, Plaintiff asserts in writing on this form that he did not receive the superintendant's decision until August 3, 2007. Accordingly, this form cannot be relied on to conclusively demonstrate the opposite – i.e., that he received the decision on July 3, 2007.

Because there is a genuine issue of material fact as to whether Plaintiff's appeal was timely, there is a genuine issue of material fact as to whether Plaintiff exhausted his administrative remedies with respect to the May 10, 2007 incident. Accordingly, Defendants are not entitled to summary judgment on exhaustion grounds.

**B.**     **Personal Involvement of Defendants Ercole, Steinbaugh, Wilson, Fraser, Kohler, Huttel, and Arrick in the May 10, 2007 Incident**

Defendants Ercole, Steinbaugh, Wilson, Fraser, Kohler, Huttel, and Arrick argue that they are entitled to summary judgment on Plaintiff's claim concerning the May 10 incident because Plaintiff has not offered facts demonstrating their personal involvement in that alleged assault.  (Def. Br. (Dkt. No. 73) 13-15)

As discussed above, to defeat a summary judgment motion, Plaintiff must demonstrate the personal involvement of Defendants in the alleged violation of his constitutional rights on May 10, 2007.  See Wright, 21 F.3d at 501.  In the Amended Complaint, Plaintiff alleges that "[o]n May 10, 2007 . . . Officer Kaufman, Kohler, Arrick, Huttel, or Sgt. Wilson, Sgt. Fraser or Lt. Steinbaugh and [E]rcole, Robert, Superintendant all assaulted Plaintiff . . ." (Am. Cmplt. (Dkt. No. 61) at 5)  When questioned about this incident at his deposition, Plaintiff stated that Kaufman had repeatedly hit him and placed him "like [in] all different type[s] of odd positions and leg locks and . . . tossed [him] around the room from wall to wall." (Deposition Tr. 32)  Approximately eight other officers then entered the room and beat Plaintiff.  (Id. at 33)  When asked to identify these other officers, Plaintiff testified that he believed that they were "all of the officers in the report," although he did not "know the[ir] names."  (Id. at 32-33)  Defendants argue that "the report" Plaintiff referred to is the "Use of Force Report" created by Defendant Fraser after the incident.  (Def. Br. (Dkt. No. 73) at 14; Harkins Decl. (Dkt. No. 75), Ex. B)  That report names Defendants Kohler, Kaufman, and Fraser as the staff members involved in the incident.  (See Harkins Decl. (Dkt. No. 75), Ex. B)

21

Defendant Kaufman's personal involvement in the May 10 incident is undisputed.[3]  In his written account of the incident, he describes how he "grabbed Robinson[,] . . . spun him around, and guided him to the corner of the room."  (Pltf. Opp. (Dkt. No. 40) at 51 (May 10, 2007 Green Haven Correctional Facility Inter-Departmental Communication from Kaufman to Fraser ("Kaufman Report")))  Defendant Kohler then "applied mechanical wrist restraints" to Plaintiff, while Kaufman held both of Plaintiff's wrists together.  (Id.)  When Plaintiff "continually attempted to come out of the corner by pushing his way out," Kaufman "push[ed] him back into it" and then eventually placed Plaintiff in a leg lock on the floor.  (Id.)  The Use of Force report states that Plaintiff "continued to struggle with both officers" after being handcuffed.  (Harkins Decl. (Dkt. No. 75), Ex. B at 1 (emphasis added))

At his deposition, Plaintiff testified that handcuffs were used to beat him, and that after he was handcuffed, he could not defend himself.  (Deposition Tr. 33)  The assault in the hearing room "finally stopped with . . . [the officers] on top of [him] and handcuffs in the back, bleeding."  (Id. at 33-34)  The fact that Plaintiff was handcuffed during the alleged assault is a significant component of the excessive force claim that Plaintiff has made.  Evidence that Kohler handcuffed Plaintiff in the midst of the physical altercation with Kaufman and Kohler – an altercation that continued even after Plaintiff was handcuffed – raises a genuine issue of material fact regarding Kohler's involvement in the alleged beating when considered together with Plaintiff's deposition testimony.

---

[3]  Defendants concede that "[i]n both the complaint and in his deposition, Plaintiff is consistent in . . . alleging the personal involvement of Defendant Kaufman in an excessive use of force [on May 10, 2007]."  (Def. Br. (Dkt. No. 73) at 14)

Kaufman's report of the incident further states that, while Kaufman was pushing Plaintiff back into the corner of the room, Fraser "entered the room and ordered that Robinson be taken to the floor." (Pltf. Opp. (Dkt. No. 40) at 51 (Kaufman Report)) In response, Kaufman "grabbed [Plaintiff's] left lower leg with both hands and stood up so he was off balance" and, "[a]fter the inmate was on the floor," put him in a leg lock. (Id.) The Use of Force Report states that Fraser "forced the Inmate to the [f]loor" and "held the Inmate [d]own . . . [while Kaufman applied the leg lock] until the escort officers arrived." (Harkins Decl. (Dkt. No. 75), Ex. B at 2) This evidence indicates that Fraser was not only aware of Kaufman's conduct, but also directly participated in the use of force against Plaintiff.

Plaintiff's testimony and DOC records of the May 10 incident also raise a genuine issue of material fact as to Defendant Huttel's involvement in the incident. In his report, Kaufman states that "[a]fter [Plaintiff] was on the floor, I applied a figure four leg lock until the response team arrived. Officer Huttel then relieved me." (Pltf. Opp. (Dkt. No. 40) at 51 (Kaufman Report)) According to Huttel's report, he "assisted in standing the inmate up and escorting him to the [medical] clinic. . . . [while maintaining] control of the inmate's left side. . . . When [Huttel] removed the [Plaintiff's] restraints in the clinic, [Huttel] received a significant amount of the inmate[']s blood on [his] left hand." (Pltf. Opp. (Dkt. No. 40-1) at 2 (May 10, 2007 Green Haven Correctional Facility Inter-Departmental Communication from Huttel to Fraser ("Huttel Report")))

At his deposition, Plaintiff testified that several officers entered the room while Kaufman was holding him in a leg lock; that these officers beat him; and that these officers continued to beat him while escorting him to the medical facility. (Deposition

23

Tr. 32-34)  Given that the record demonstrates that Huttel was one of the officers who entered the room and escorted Plaintiff to the medical unit, there is a factual issue as to whether Huttel was personally involved in the alleged beating.

Defendants Arrick and Wilson were also part of the response team that entered the room after Kaufman restrained Plaintiff, and both officers assisted in escorting Plaintiff to the medical facility.  In Arrick's report of the incident, he states that he "assisted in standing the inmate up and escorting him to the clinic. . . . [while maintaining] control of the inmate[']s right side." (Pltf. Opp. (Dkt. No. 40-1) at 3 (May 10, 2007 Green Haven Correctional Facility Inter-Departmental Communication from Arrick to Fraser ("Arrick Report")))  Wilson states that "[w]ith Officer Huttel on Robinson[']s left side and Officer Arrick on his right side, [he] escorted Robinson to the hospital clinic." (Id. at 4 (May 10, 2007 Green Haven Correctional Facility Inter-Departmental Communication from Wilson to Fraser ("Wilson Report")))  In light of Plaintiff's account of the beating he received when the responding officers entered the room and escorted him to the medical facility, there is a factual issue as to Arrick's and Wilson's involvement in the incident.

Lieutenant Steinbaugh was also present for the physical altercation between Plaintiff, Kohler, and Kaufman.  In his report of the incident, Steinbaugh states that he gave orders to Plaintiff – while the other officers attempted to place mechanical restraints on his wrists – and that he "called for the area sergeant to report." (Id. at 5 (May 10, 2007 Green Haven Correctional Facility Memorandum from Steinbaugh to Ercole ("Steinbaugh Report")))  Wilson states that he, Arrick, and Huttel responded to Steinbaugh's call.  (Id. at 4 (Wilson Report))  Steinbaugh was present when those officers

arrived and escorted Plaintiff from the room. (Id. at 5 (Steinbaugh Report)) Steinbaugh's presence in the room throughout the encounter raises factual issues as to whether he directly participated in the assault and whether – as a supervisor of the other officers – he failed to properly supervise those officers or remedy the alleged misconduct that he observed taking place. See Colon, 58 F.3d at 873.

        As to Superintendant Ercole, there is no evidence that he was present for the alleged beating, but the record indicates that he encountered Plaintiff soon thereafter. Plaintiff testified that – after he was brought to the medical facility – "the superintendent came to see me and told me – and I remember – 'We finally got your ass.'"[4] (Def. Br. (Dkt. No. 73) at 14) When asked to clarify who said that to him, Plaintiff testified that Ercole made this statement. (Id.) This evidence is sufficient to raise a genuine question of material fact as to whether Ercole "after being informed of the violation . . . , failed to remedy the wrong," "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom," "was grossly negligent in supervising subordinates who committed the wrongful acts," or "exhibited deliberate indifference to the rights of [Plaintiff] by failing to act on information indicating that unconstitutional acts were occurring." Colon, 58 F.3d at 873.

_____

[4] Defendants quote and cite to these portions of Plaintiff's deposition in their brief. A transcript reflecting this testimony has not been provided to the Court, however. (See Harkins Decl. (Dkt. No. 75), Ex. A) Given the liberal treatment afforded pro se litigants – particularly in the context of summary judgment motions – the Court will consider the referenced excerpts in evaluating whether a genuine issue of material fact exists. See F.T.C. v. Med. Billers Network, Inc., 543 F. Supp. 2d 283, 303 (S.D.N.Y. 2008) ("Although [a pro se litigant's] arguments may ultimately be rejected if unsupported by the law or the evidence, the Court will afford him 'special solicitude' in responding to [a] motion for summary judgment. In particular, the Court will consider the best arguments suggested by [his] submissions and allow [him] to benefit from the [opposing party's] briefs and supporting papers whenever appropriate.").

For the reasons stated above, Defendants' motion for summary judgment on Plaintiff's claims regarding the May 10, 2007 incident will be denied.

## CONCLUSION

Defendants Ercole, Steinbaugh, Fraser, Wilson, Kaufman, Kohler, Huttel, and Arrick's motion for summary judgment on Plaintiff's claims regarding the cell door and the pat frisk incidents on April 24, 2007 is granted. Defendants' motion for summary judgment on Plaintiffs' claims regarding the May 10, 2007 incident is denied. Defendants' motion for permission to reply to Plaintiff's February 11, 2014 letter is denied as moot. The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 70, 88).

The Clerk is further ordered to terminate as defendants J. Henschel, Sgt. Ward, T. Lucas, Correction Officer Titka, K. Johnson, Macko, Caron, Superintendent Phillips, Sullivon, Lieutenant Alexander, R. Hamilton, T. Stevens, Schmitt, Correction Officer R. Ward, Novoa, Prison Medical Staff's RN Staff, Krause, and B. Roberts.[5]

---

[5] The Amended Complaint contains no allegations concerning J. Henschel, Sgt. Ward, T. Lucas, Correction Officer Titka, K. Johnson, Macko, Caron, Superintendent Phillips, Sullivon, Lieutenant Alexander, R. Hamilton, T. Stevens, Schmitt, Correction Officer R. Ward, Novoa, Prison Medical Staff's RN Staff, Krause, or B. Roberts. Plaintiff has likewise not suggested that these individuals played any role in the April 24 and May 10 incidents. Accordingly, to the extent any claims remain against these Defendants, those claims are dismissed. Cf. Medina v. Hunt, No. 9:05-CV-1460, 2008 WL 4426748, at *4 (N.D.N.Y. Sept. 25, 2008) ("[A] district court may, sua sponte, address whether a pro se prisoner has failed to state a claim upon which relief may be granted.").

The Clerk of the Court is directed to mail a copy of this Order to Latee

Robinson, 06-A-1498, Great Meadow Correctional Facility, Box 51, Comstock, NY

12821-0051.

Dated: New York, New York
      March 26, 2014             SO ORDERED.

                               Paul G. Gardephe
                               United States District Judge